UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

KIM BROWN TERRY,                                           **Docket No.:**

         *Plaintiff,*

   -against-                                               **COMPLAINT**

SEBELA PHARMACEUTICALS, INC. and                          **PLAINTIFF DEMANDS**
BRAINTREE LABORATORIES INC.,                              **A JURY TRIAL**

         *Defendants.*

-------------------------------------------------------------------------X

     Plaintiff, Kim Brown Terry, as and for her Complaint, all upon information and belief, respectfully alleges as follows:

## JURISDICTION AND VENUE

     1.    This Court has original jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C. §1332, in that Plaintiff's claims exceed the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

     2.    Venue is proper under 42 U.S.C §2000e-5(f)(3) and 28 U.S.C §1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of New York.

## IDENTITY OF THE PARTIES

     3.    At all relevant times mentioned herein, Plaintiff Kim Brown Terry ("Brown") was employed by Defendants Sebela Pharmaceuticals, Inc. and Braintree Laboratories Inc., until her unlawful termination on or about June 6, 2019, approximately two months after Defendants received Brown's most recent complaint of discrimination.

4.      Defendant Sebela Pharmaceuticals, Inc. (hereinafter "Sebela") is a Delaware corporation and is authorized to and does conduct business in the State of New York, where Brown performed her services until her unlawful termination.

5.      Defendant Braintree Laboratories Inc. ("Braintree") is a Massachusetts corporation and is authorized to and does conduct business in the State of New York.

6.      Sebela manufactures, markets and distributes pharmaceuticals and is based in the City of Roswell, Georgia.

7.      Braintree manufactures, markets and distributes pharmaceuticals and is based in the City of Braintree, Massachusetts.

8.      Brown initially was hired by Braintree and began working for Sebela after Sebela acquired Braintree in or around late April or early May 2018.

9.      Since acquiring Braintree, Sebela manufactures, markets and distributes pharmaceuticals under both brand names and both Defendants are herein referred to as "Sebela."

## BACKGROUND RELEVANT TO ALL CAUSES OF ACTION

10.     Brown began her employment with Sebela on or about August 2015, as a Territory Manager for the region that included New York City.

11.     In that role, Brown sold pharmaceuticals that were manufactured by Sebela, including those known as Suprep and Motofen.

12.     At all relevant times, Brown was fully qualified for her position and executed her duties successfully and to the satisfaction of Sebela, as confirmed by, among other things, the fact that Sebela promoted Brown from Territory Manager I to Territory Manager II after her first year with the company.

13.     At all relevant times, and since the late April or early May 2018 acquisition of Braintree by Sebela, Brown reported to Julie Tidrick ("Tidrick"), who at all times was a District Manager.

14.     Brown and her husband desired to become parents, which eventually led to their decision to begin IVF procedures in or around fall 2017.

15.     Since at least the time that Tidrick became Brown's manager, Tidrick knew that Brown was undergoing IVF to become pregnant because Brown told Tidrick and, as a result, Tidrick has treated Brown less well than her other subordinates.

16.     For example, in or around June 2018, Tidrick became very critical of Brown's use of sick leave to recover from an IVF-related medical procedure and instead required Brown to take the unorthodox step of using paid time off.

17.     Additionally, during periods following that initial incident, Tidrick would ask invasive questions regarding Brown's medical progress and the results of examinations, including questions regarding what procedures Brown had undergone and the results of those procedures, all of which was unwelcome to Brown and required Brown to ask Tidrick to stop.

18.     Soon after Tidrick began criticizing Brown's use of sick time for IVF-related medical appointments, in or around July 2018, Brown complained to Barbara Hanson ("Hanson"), who at the time was Brown's Human Resources contact at Sebela.

19.     Hanson told Brown to continue using sick time for these appointments, and Brown followed Hanson's directions.

20.     In or around December 2018, Brown learned that she was pregnant.

21.     Brown feared that Tidrick would become even more critical of her after Tidrick learned that she was pregnant, as Tidrick had already begun treating her differently knowing that she was undergoing IVF.

22.     Nevertheless, in or around December 2018, Brown informed Tidrick's supervisor, Michael Lederman ("Lederman"), an Area Manager for Sebela, of her pregnancy.

23.     Shortly thereafter, Brown and Lederman discussed her upcoming maternity leave.

24.     During that meeting, Lederman became annoyed when Brown indicated that she planned to take the maximum amount of leave pursuant to Sebela's maternity policy to be with her newborn, which made Brown fearful that the negative perception of her pregnancy and steps to become pregnant were shared and supported by even more senior members of Sebela's leadership.

25.     On or about February 2019, which was soon after Brown informed Tidrick directly of her pregnancy, Tidrick gave Brown an unjustifiably negative written performance evaluation and lowered her annual bonus, which had ranged from $1,500 to $5,000, to $668.

26.     On February 15, 2019, Brown complained to Elizabeth Johnson ("Johnson"), the Senior Director of Human Resources at Sebela, about Tidrick's discrimination against her based on her pregnancy and attempts to become pregnant.

27.     On March 1, 2019, Brown memorialized her ongoing complaint to Johnson by email, further complaining, "As I previously told you on our call on 2/15, I feel I have experienced improper conduct and unfair treatment from Julie while doing IVF and attempting to become pregnant… This started very early on with [Tidrick] when I took sick days for a medical procedure last June.  [Tidrick] repeatedly questioned why I was using sick days for my procedure and insisted I use PTO instead even after explaining to her that I was recovering from a procedure and needed a sick day.  She continuously harassed me on this point until I spoke to HR regarding the matter."

28.     Rather than address her complaint, Sebela disregarded her concerns and instead leveled the "policy" that would wrongly and unlawfully outline that recovering from IVF procedures did not constitute a valid basis for sick time and completely disregarded the underlying complaints about Tidrick.

29.     Brown further complained in her written response to the Performance Improvement Plan, stating, "As I complained about in my letter to Liz dated March 1, 2019, this PIP constitutes discrimination on the basis of my pregnancy. Julie began targeting me while I was receiving IVF, and this PIP is the culmination of [Tidrick's] discriminatory efforts to terminate me or get me to quit."

30.     Again, Sebela failed to take any action to address Brown's complaint.

31.     On June 6, 2019, Sebela terminated Brown.

32.     Sebela justified the termination as a response to Brown's failure to meet the objectives of the PIP.

33.     Sebela's explanation does not make sense, however, as Brown had just received confirmation on April 22, 2019, from Tidrick, that Brown had *led* her sales group with a 1.43% increase in sales of Suprep in March 2019.

34.     Further, the close temporal proximity between Brown's complaints of discrimination and when she was terminated leaves little to no doubt that Brown's pregnancy and/or her complaints about discrimination were motivating reasons for her termination.

35.     As a result of Sebela's discriminatory and retaliatory conduct, Brown has suffered the adverse effects of gender discrimination, including pregnancy discrimination, and retaliation, and has suffered emotionally and financially, losses that Brown believes will continue into the future.

36.     Here, Sebela's conduct towards Brown shows that it acted with willful or wanton negligence, or recklessness, or a conscious disregard of Brown's rights under the New York City Human Rights Law, or that its unlawful actions against Brown were so reckless as to amount to a disregard of Brown's rights, so that in addition to all the damages inflicted upon Brown and in addition to all the measure of relief to which Brown may properly be entitled herein, Sebela should also be required to pay punitive damages as punishment for its discriminatory conduct in order to deter it and others similarly situated from engaging in such conduct in the future.

**AS AND FOR A CAUSE OF ACTION ON BEHALF OF BROWN AGAINST SEBELA FOR GENDER, PREGNANCY AND FERTILITY DISCRIMINATION IN VIOLATION OF CHAPTER I, TITLE 8, §8-107(1)(a) OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK**

37.     Brown repeats, re- alleges and incorporates each and every allegation contained in paragraphs 1 through 36 of this Complaint, as though fully set forth at length herein.

38.     The acts which constitute and form this cause of action were perpetrated upon Brown while she was in the course of her employment with Sebela and while she was protected under the New York City Human Rights Law because of her gender.

39.     Up to and including the time of the wrongful and unlawful discrimination alleged herein, including her termination, which was adverse employment action, Brown was fully qualified for her position and performed her duties in that position in a satisfactory fashion and was in a position to continue doing so.

40.     Given the close temporal proximity between Brown announcing her pregnancy and her termination, in addition to Sebela's inability to provide a reason for Brown's termination, there is a very real inference that the actual basis for Brown's termination was unlawful gender and pregnancy discrimination.

41.     The facts contained herein constitute unlawful discrimination against Brown by Sebela, based on Brown's gender and pregnancy, in violation of Chapter I, Title 8 of the Administrative Code of the City of New York, §8-107(1)(a)("New York City Human Rights Law"), which inter alia, states that:

> It shall be unlawful discriminatory practice...[f]or an employer or an employee or agent thereof, because of the . . . gender . . . of any person...to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

42.     As a result of Sebela's violation of the New York City Human Rights Law, Sebela is liable to Brown pursuant to §8-502(a) of said statute for "damages" and pursuant to §8-502(f) of said statute for "costs and reasonable attorney's fees," as has been judicially established.

43.     As a proximate result of Sebela's conduct, Brown has been adversely affected in her employment, emotional well-being, the quality of her life and in her normal life's pursuits, and Brown believes Sebela's conduct, complained of herein, has and will continue to have a negative effect upon her, all of which Brown alleges to be in the amount of Two Million ($2,000,000) Dollars.

44.     Here, the acts of Sebela were so reprehensible and were done with reckless indifference in the face of a perceived risk that its actions would violate Brown's protected rights under the New York City Human Rights Law, that, in addition to all the damages inflicted upon Brown and in addition to all the measures of relief to which Brown may properly be entitled herein, Sebela should additionally be required to pay punitive damages as punishment for its discriminatory conduct in the further amount of Three Million ($3,000,000) Dollars, in order to deter Sebela and others similarly situated from engaging in such conduct in the future.

45.     Brown, therefore, seeks compensatory damages in the this Cause of Action, including, among other things, the emotional harm inflicted upon her in the sum of Two Million ($2,000,000) Dollars, and an additional and further sum of Three Million ($3,000,000) Dollars for punitive damages, making a total of Five Million ($5,000,000) Dollars in this Cause of Action, plus prejudgment interest, the costs of this action, as well as reasonable attorney's fees.

**AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF BROWN AGAINST SEBELA FOR SEXUAL REPRODUCTIVE HEALTH DISCRIMINATION IN VIOLATION OF CHAPTER I, TITLE 8, §8-107(1)(a) OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK**

46.     Brown repeats, re- alleges and incorporates each and every allegation contained in paragraphs 1 through 36 of this Complaint, as though fully set forth at length herein.

47.     The acts which constitute and form this cause of action were perpetrated upon Brown while she was in the course of her employment with Sebela and while her sexual reproductive health decisions were protected under the New York City Human Rights Law.

48.     The term "sexual reproductive health decisions" means any decision by an individual to receive services, which are arranged for or offered or provided to individuals relating to sexual and reproductive health, including the reproductive system and its functions, and such services include, but are not limited to, fertility-related medical procedures.

49.     Up to and including the time of the wrongful and unlawful discrimination alleged herein, including her termination, which was adverse employment action, Brown was fully qualified for her position and performed her duties in that position in a satisfactory fashion and was in a position to continue doing so.

50.     Given Sebela's criticisms for Brown using sick leave to recover from undergoing IVF-related procedures and the negative performance evaluations that followed and led to her

termination, there is a very real inference that the actual basis for Brown's termination was discrimination due to her sexual reproductive health decisions.

51.     The facts contained herein constitute unlawful discrimination against Brown by Sebela, based on Brown's sexual reproductive health decisions, in violation of Chapter I, Title 8 of the Administrative Code of the City of New York, §8-107(1)(a)("New York City Human Rights Law"), which inter alia, states that:

> It shall be unlawful discriminatory practice...[f]or an employer or an employee or agent thereof, because of the . . . sexual and reproductive health decisions . . . of any person . . . to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

52.     As a result of Sebela's violation of the New York City Human Rights Law, Sebela is liable to Brown pursuant to §8-502(a) of said statute for "damages" and pursuant to §8-502(f) of said statute for "costs and reasonable attorney's fees," as has been judicially established.

53.     As a proximate result of Sebela's conduct, Brown has been adversely affected in her employment, emotional well-being, the quality of her life and in her normal life's pursuits, and Brown believes Sebela's conduct, complained of herein, has and will continue to have a negative effect upon her, all of which Brown alleges to be in the amount of Two Million ($2,000,000) Dollars.

54.     Here, the acts of Sebela were so reprehensible and were done with reckless indifference in the face of a perceived risk that its actions would violate Brown's protected rights under the New York City Human Rights Law, that, in addition to all the damages inflicted upon

Brown and in addition to all the measures of relief to which Brown may properly be entitled herein, Sebela should additionally be required to pay punitive damages as punishment for its discriminatory conduct in the further amount of Three Million ($3,000,000) Dollars, in order to deter Sebela and others similarly situated from engaging in such conduct in the future.

55.    Brown, therefore, seeks compensatory damages in the this Cause of Action, including, among other things, the emotional harm inflicted upon her in the sum of Two Million ($2,000,000) Dollars, and an additional and further sum of Three Million ($3,000,000) Dollars for punitive damages, making a total of Five Million ($5,000,000) Dollars in this Cause of Action, plus prejudgment interest, the costs of this action, as well as reasonable attorney's fees.

### AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF BROWN AGAINST SEBELA FOR RETALIATION IN VIOLATION OF CHAPTER 1, TITLE 8, §8-107(1)(a) OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

56.    Brown repeats, re-alleges and incorporates in full paragraphs 1 through 36 of this Complaint, as though fully set forth at length herein.

57.    Each time that Brown complained of Tidrick's discriminatory conduct, she was engaged in a protected activity under the New York City Human Rights Law, of which Defendants were aware.

58.    As a proximate result of Brown engaging in protected activities under the New York City Human Rights Law, Brown suffered adverse employment action that culminated in her unlawful termination, which was causally connected to her complaints of discrimination.

59.    The aforementioned acts of Defendants constitute unlawful retaliation against Brown in violation of Chapter I, Title 8 of the Administrative Code of the City of New York, §8-107(7) of the New York City Human Rights Law, which provides, inter alia, that:

> It shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter . . .

60.    As a result of Defendants' violations of the New York City Human Rights Law §8-107(7), Defendants are liable to Brown pursuant §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

61.    Brown has been caused to suffer injuries resulting in emotional anguish and suffering, and has been humiliated, demeaned and otherwise degraded because of Defendants' outrageous conduct in violation of Brown's human rights, all of which has impacted her well-being and the quality of her life.

62.    As a direct and proximate result of Defendants' retaliatory conduct complained of herein, Brown has suffered damages, injuries and losses, both actual and prospective, which include the loss of her job and the emotional pain and suffering she has been caused to suffer and continues to suffer, all of which Brown alleges to be in the amount of Two Million Dollars ($2,000,000).

63.     Here, Defendants' conduct towards Brown shows that it acted with willful or wanton negligence, or recklessness, or a conscious disregard of Brown's rights under the New York City Human Rights Law, or that its unlawful actions against Brown were so reckless as to amount to a disregard of Brown's rights, so that, in addition to all the damages inflicted upon Brown and in addition to all the measures of relief to which Brown may properly be entitled herein, Defendants should additionally be required to pay punitive damages as punishment for its discriminatory conduct in the further amount of Three Million Dollars ($3,000,000), in order to deter Defendants and others similarly situated from engaging in such conduct in the future.

64.     Brown, therefore, seeks judgment against Defendants on this cause of action, including, among other things, for compensatory damages in the sum of Two Million Dollars ($2,000,000), and the additional further sum of Three Million Dollars ($3,000,000) in punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees on this cause of action, making a total claim of Five Million Dollars ($5,000,000).

**WHEREFORE**, Kim Brown Terry demands judgment against Sebela Industries, Inc. and Braintree Laboratories, Inc., on her First Cause of Action for gender, pregnancy and reproductive health discrimination in the sum of Two Million ($2,000,000) Dollars in compensatory damages and Three Million ($3,000,000) Dollars in punitive damages for a total of Five Million ($5,000,000) Dollars; on her Second Cause of Action for sexual reproductive health discrimination in the sum of Two Million ($2,000,000) Dollars in compensatory damages and Three Million ($3,000,000) Dollars in punitive damages, for a total of Five Million ($5,000,000) Dollars; and on her Third Cause of Action for retaliation in the sum of Two Million ($2,000,000) Dollars in

14

compensatory damages and Three Million ($3,000,000) Dollars in punitive damages for a total of

Five Million ($5,000,000) Dollars; so that, for all Causes of Action, Plaintiff seeks a total of Fifteen

Million ($15,000,000) Dollars, as well as the costs of this action, reasonable attorney's fees as is

permitted under the law, pre-judgment interest, and for such other and further relief as this Court

deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

**SCHWARTZ PERRY & HELLER LLP**
*Attorneys for Plaintiff*

By:_____
DAVIDA S. PERRY
DANIEL H. KOVEL
3 Park Avenue, Suite 2700
New York, NY 10016
(212) 889-6565